IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. |
| | : | |
| vs | : | INDICTMENT **3 : 08 CR 0 8 4** |
| | : | 18 U. S. C. § 2 |
| JULIAN M. HICKMAN, | : | 18 U. S. C. § 371 |
| (Counts 1-8, 10-13) | : | 18 U. S. C. § 1341 |
| | : | 18 U. S. C. § 1343 |
| JESSICA A. ZBACNIK, | : | 18 U. S. C. § 1349 |
| (Counts 1-8, 10) | : | 18 U. S. C. § 1956(h) |
| | : | 26 U. S. C. § 7203 |
| KENNETH O. MCGEE, | : | |
| (Counts 1-7, 9-10) | : | Forfeiture |
| | : | |
| ROBERT MITCHELL, | : | |
| (Counts 1-8, 9-10) | : | |
| | : | |
| KAMAL J. GREGORY, and | : | |
| (Counts 1, 9-10) | : | |
| | : | |
| EDWARD MCGEE | : | |
| (Counts 1-7, 9-10) | : | |
| | : | |
| Defendants. | : | |

THE GRAND JURY CHARGES THAT:

## COUNT 1
### (Conspiracy Under 18 U. S. C. §§ 371 and 1349)

### INTRODUCTION

1.    During the period covered by this Indictment, the defendants JULIAN M.

HICKMAN,  KAMAL J. GREGORY, JESSICA A. ZBACNIK, ROBERT MITCHELL,

EDWARD MCGEE, and KENNETH O. MCGEE, operated and controlled various real estate,

mortgage and title insurance related businesses and corporations organized under the laws of the

1

State of Ohio and elsewhere, to include: Commercial Property Advisor Group (CPAG), Diamond Vision Capital Group, First Union Appraisals, Gem City Professional Services (GCPS), Option One Appraisals, JMH Real Estate, River City Appraisers, Alliance Mortgage, Gregory Investments, Inc., KG Enterprises, Mad River Properties, Premier Mortgage Funding of Ohio, Star Point Mortgage, Ohio Financial Group, Mortgages Unlimited, Allied Mortgage, E & A Investments, and KM Investments. These various business enterprises operated out of locations in the Dayton, Ohio area.

  2. From on or about March 15, 2002, and continuing through the date of this Indictment, in the Southern District of Ohio and elsewhere, defendants JULIAN M. HICKMAN, KAMAL J. GREGORY, JESSICA A. ZBACNIK, ROBERT MITCHELL, EDWARD MCGEE, and KENNETH O. MCGEE, together and with Randall A. Davidson, Jocelyn Hammond, Timothy Pearson, Stephanie Woods, Elizabeth Jones, Kelvin Mitchell, and other individuals both known and unknown to the Grand Jury, did conspire between themselves and each other to commit certain offenses against the United States as follows:

    a) 18 U. S. C. § 1341, namely mail fraud, that is to knowingly participate in, devise and intend to devise a scheme and artifice to defraud various financial institutions insured by the Federal Deposit Insurance Corporation (FDIC), of money, funds, credits, assets and other property owned by and under their respective care, custody, and control by means of materially false and fraudulent pretenses, representations or promises, and, for the purpose of executing such a scheme and artifice, and attempting to do so, did deposit and cause to be deposited certain documents to be sent and delivered via commercial interstate carrier; and

b)    18 U. S. C. § 1343, namely wire fraud, that is to knowingly participate in,

devise and intend to devise a scheme and artifice to defraud various financial

institutions insured by the FDIC, of money, funds, credits, assets and other

property owned by and under their respective care, custody, and control by means

of materially false and fraudulent pretenses, representations or promises, and, for

the purpose of executing such a scheme and artifice, and attempting to do so, did

transmit and cause to be transmitted certain documents by means of wire

communication in interstate commerce; and

c)    18 U. S. C. § 1956, namely money laundering, that is knowing that certain

real estate involved in financial transactions affecting interstate commerce

represented the proceeds and profits of some form of unlawful activity, did

conduct and attempt to conduct such financial transactions which, in fact involved

the proceeds of specified unlawful activity, with the intent to promote the carrying

on of a specified unlawful activity.

## OBJECTS OF THE CONSPIRACY

3.    It was the object of the conspiracy and the scheme to defraud to wrongfully obtain

monies, profits, real property and other things of value, by arranging, facilitating, manipulating

documents associated with real estate sales and closings, in order to obtain excess mortgage loan

proceeds generated from the sale of residential properties, the majority of which were low-

income, dilapidated, depressed residential properties located in and around the Dayton, Ohio

area, and other areas for the personal benefit of the conspirators.

## THE SCHEME TO DEFRAUD

4.      It was a part of the conspiracy that beginning on or about March 15, 2002, and continuing through the date of this Indictment, that defendants JULIAN M. HICKMAN, KAMAL J. GREGORY, JESSICA A. ZBACNIK, ROBERT MITCHELL, EDWARD MCGEE, and KENNETH O. MCGEE, together with Randall A. Davidson, Jocelyn Hammond, Timothy Pearson, Stephanie Woods, Elizabeth Jones, and Kelvin Mitchell, and other individuals both known and unknown to the Grand Jury, prepared and submitted, and caused to be prepared and submitted on behalf of prospective purchasers of residential properties, the majority of which were low income, dilapidated and otherwise depressed residential properties in the Dayton, Ohio area and other areas, certain mortgage loan application packages to various financial institutions located throughout the United States which contained false, fictitious, and fraudulent statements in various documents including: agreements to sell real estate, Uniform Residential Loan Applications (Form 1003), Department of Housing & Urban Development Settlement Statements (HUD-1), cashier's checks, bank statements, bank deposit slips, bank withdrawal slips, residential property appraisal reports, and other related miscellaneous correspondence and memoranda.

5.      It was further part of the conspiracy that defendants JULIAN M. HICKMAN, KAMAL J. GREGORY, JESSICA A. ZBACNIK, ROBERT MITCHELL, EDWARD MCGEE, KENNETH O. MCGEE, and other individuals both known and unknown to the Grand Jury placed, or caused to be placed, various false, fictitious, and fraudulent statements and documents in interstate commerce via commercial interstate carriers; and via electrical signs and signals by means of wire communication, namely facsimile transmissions from telephone numbers and

4

computer electronic message equipment installed at the following listed title agencies and

mortgage brokerage firms located throughout the Southern District of Ohio, to include: All City

Title Agency Inc., 7087 Corporate Way, Centerville, Ohio; NETCO Dayton, 1129 Miamisburg-

Centerville Road, Suite 100, West Carrollton, Ohio; Alliance Mortgage Group, 8640 Poe

Avenue, Suite 100, Dayton, Ohio; Aleva Mortgage of Ohio, Inc., 7045 Corporate Way,

Centerville, Ohio; Lanes Real Estate Services, 912 Falmouth, Piqua, Ohio; Partners Land Title,

3033 Kettering Blvd., No. 301, Dayton, Ohio, to various locations outside the State of Ohio to

various out of state mortgage lending companies and financial institutions insured by the FDIC.

      6.      It was further part of the conspiracy that defendants JULIAN M. HICKMAN,

KAMAL J. GREGORY, JESSICA A. ZBACNIK, ROBERT MITCHELL, EDWARD MCGEE,

and KENNETH O. MCGEE, together with other individuals both known and unknown to the

Grand Jury, actively recruited unsuspecting individuals to purchase these Dayton, Ohio

residential properties, the majority of which were low income, dilapidated and otherwise

depressed residential properties at prices artificially inflated above legitimate fair-market values,

financed with mortgage loans fraudulently facilitated, arranged, brokered and closed by

defendants JULIAN M. HICKMAN, KAMAL J. GREGORY, JESSICA A. ZBACNIK,

ROBERT MITCHELL, EDWARD MCGEE, and KENNETH MCGEE, together with Randall A.

Davidson, Jocelyn Hammond, Timothy Pearson, Stephanie Woods, Elizabeth Jones, and Kelvin

Mitchell and other individuals both known and unknown to the Grand Jury.

      7.      It was further part of the conspiracy that defendants JULIAN M. HICKMAN,

5

KAMAL J. GREGORY, JESSICA A. ZBACNIK, ROBERT MITCHELL, EDWARD MCGEE, and KENNETH O. MCGEE, together with other individuals both known and unknown to the Grand Jury, affirmatively, knowingly and fraudulently concealed from various FDIC insured financial institutions the fact that various prospective purchasers and mortgage applicants recruited by this scheme and artifice did not in fact personally provide required cash down payments as reflected in HUD-1 Forms and Form 1003 loan applications, both of which were prepared and submitted, or caused to be prepared and submitted by one or more of the conspirators and submitted via commercial interstate carrier, and via electronically transmitted interstate data faxes to mortgage lending institutions and various FDIC insured financial institutions as part of mortgage loan application and approval process.

8.    It was further a part of this conspiracy that the defendants JULIAN M. HICKMAN, KAMAL J. GREGORY, JESSICA A. ZBACNIK, ROBERT MITCHELL, EDWARD MCGEE, and KENNETH O. MCGEE, together with other individuals both known and unknown to the Grand Jury, affirmatively, knowingly and fraudulently concealed from various FDIC insured financial institutions the fact that the defendants JULIAN M. HICKMAN, ROBERT MITCHELL, EDWARD MCGEE, and KENNETH O. MCGEE, together with other individuals both known and unknown to the Grand Jury, provided cash down payments on behalf of mortgage loan applicants contrary to information contained in HUD-1 settlement statements and Form 1003 loan applications, which were transmitted in interstate commerce to various mortgage lending institutions, banks and other financial institutions which were FDIC insured via

6

electronic wire facsimiles and interstate commercial carriers from the state of Ohio to other states to include Illinois and California as part of mortgage loan application packages.

9.      It was further a part of the conspiracy that defendants JULIAN M. HICKMAN, ROBERT MITCHELL, EDWARD MCGEE, and KENNETH O. MCGEE  affirmatively and fraudulently concealed from various FDIC insured financial institutions the fact that the defendants JULIAN M. HICKMAN, ROBERT MITCHELL, EDWARD MCGEE, and KENNETH O. MCGEE, together with other individuals both known and unknown to the Grand Jury,  paid cash bonuses or "kick backs" to mortgage loan applicants in return for their agreement to purchase and close on residential mortgage loans, the majority of which involved the purchase of low income, dilapidated and otherwise depressed residential properties located in the Dayton, Ohio area, and elsewhere.

10.      It was further part of the conspiracy that defendants JULIAN M. HICKMAN, KAMAL J. GREGORY, JESSICA A. ZBACNIK, ROBERT MITCHELL, EDWARD MCGEE, and KENNETH O. MCGEE, together with other individuals both known and unknown to the Grand Jury others, opened bank accounts at financial institutions within the Dayton, Ohio area and elsewhere, in order to conduct financial transactions, to promote and facilitate the operation of the fraudulent mortgage loan businesses, and to disguise the true nature, location, source, ownership and control of the proceeds of the monies and profits fraudulently generated by the conspiracy.

11. It was further part of the conspiracy that defendants JULIAN M. HICKMAN, ROBERT MITCHELL, EDWARD MCGEE, and KENNETH O. MCGEE, as part of this fraudulent mortgage loan scheme, paid defendants KAMAL J. GREGORY, JESSICA A. ZBACNIK, and other individuals both known and unknown to the Grand Jury cash payments in return for their role and participation in recruiting mortgage lenders.

12. It was further part of the conspiracy that defendants KAMAL J. GREGORY and JESSICA A. ZBACNIK, fraudulently altered, fabricated and falsified information contained on various mortgage loan related documents to include: Forms 1003, invoices, bank deposits, bank statements, general warranty deeds, and other associated correspondence and memorandum.

13. It was further part of the conspiracy that defendant JULIAN M. HICKMAN prepared and caused to be prepared false, fraudulent and otherwise inflated real estate appraisal reports.

14. It was further part of the conspiracy that defendants JULIAN M. HICKMAN, KAMAL J. GREGORY, JESSICA A. ZBACNIK, ROBERT MITCHELL, EDWARD MCGEE, and KENNETH O. MCGEE, together with other individuals both known and unknown to the Grand Jury, fraudulently obtained over $15 million in mortgage loans from over 33 mortgage lending institutions as part of this scheme.

15. It was further part of the conspiracy that defendants JULIAN M. HICKMAN, KAMAL J. GREGORY, JESSICA A. ZBACNIK, ROBERT MITCHELL, EDWARD MCGEE, and KENNETH O. MCGEE, together with Randall A. Davidson, Jocelyn Hammond, Timothy Pearson, Stephanie Woods, Elizabeth Jones, and Kelvin Mitchell and other individuals both known and unknown to the Grand Jury, fraudulently obtained over $7 million for their collective

8

personal use as part of this scheme.

16.     It was further part of the conspiracy that defendants JULIAN M. HICKMAN,

KAMAL J. GREGORY, JESSICA A. ZBACNIK, ROBERT MITCHELL, EDWARD MCGEE,

and KENNETH O. MCGEE, together with other individuals both known and unknown to the

Grand Jury, victimized over 63 separate property investors as part of this scheme.

17.     It was further part of the conspiracy that, as a result of the actions of defendants

JULIAN M. HICKMAN, KAMAL J. GREGORY, JESSICA A. ZBACNIK, ROBERT

MITCHELL, EDWARD MCGEE, and KENNETH O. MCGEE, together with other individuals

both known and unknown to the Grand Jury, over 210 residential properties were sold and closed

as part of this scheme, of which approximately 205 were located in Montgomery County, Ohio.

## OVERT ACTS

18.     In furtherance of this conspiracy and to affect the objects of this conspiracy, the

following overt acts, among others, were committed in the Southern District of Ohio and

elsewhere:

### 3416 Earlham Drive, Dayton, Ohio

a.     Sometime between March 15, 2002 and July 25, 2003,
defendant JULIAN M. HICKMAN spoke with a person known to
the Grand Jury, hereafter identified as Buyer-1 regarding the
purchasing of rental properties. During this conversation,
defendant JULIAN M. HICKMAN assured Buyer-1 that he could
arrange a no "out-of-pocket" expenses mortgage loan to acquire
rental properties. Defendant JULIAN M. HICKMAN further
indicated to Buyer-1 that he would finance all necessary
renovations on the property, and further finance all mortgage
payments until a suitable tenant was located for the property.

b. Subsequent to the conversation described in Overt Act a., defendant JESSICA A. ZBACNIK, served as Buyer-1's loan officer. In this capacity, she forwarded Buyer-1's Form 1003 loan application to Argent Mortgage Company, LLC, 2550 Golf Road, Rolling Meadows, IL (hereinafter referred to as "Argent Mortgage") for underwriting. This loan application contained false personal credit data. This loan application also falsely indicated that Buyer-1 had $10,613.20 in funds available and reserved for use as a down payment at the closing.

c. On or about July 25, 2003, co-conspirator Jocelyn Hammond closed or caused to close Buyer-1's mortgage loan at All City Title Agency, Inc. 7087 Corporate Way, Centerville, Ohio 45459 (hereinafter referred to as "All City"). All-City was owned by co-conspirator, Jocelyn L. Hammond. As a result of these actions, Buyer-1 purchased 3416 Earlham Drive, Dayton, Ohio for $67,000.00.

d. Based upon the fraudulent information and documents forwarded, and caused to be forwarded to Argent Mortgage by the fraudulent actions of defendants JULIAN M. HICKMAN and JESSICA A. ZBACNIK and co-conspirator Jocelyn Hammond, on or about July 29, 2003, Argent Mortgage caused to be wired $60,826.89 to All City's financial account located at National City Bank, an FDIC insured institution.

e. On or about July 28, 2003, co-conspirator, Jocelyn L. Hammond issued a disbursement check in the amount of $56,523.33, made payable to Gem City Professional Services on an All City corporate check, numbered 5722, drawn on a National City Bank checking account. This check originated from the disbursement funds provided by Argent Mortgage for the previously described closing on 3416 Earlham Drive, Dayton, Ohio.

f. On or about July 28, 2003, defendant JULIAN M. HICKMAN cashed the check described in Overt Act e. above at the 6067 Far Hills Avenue, Dayton, Ohio branch of National City Bank.

g. On or about July 28, 2003, defendant JULIAN M. HICKMAN purchased with a portion of the proceeds of the cashed check described in Overt Acts e. and f. above, National City Bank Official Check Number 774747364, in the amount of $8,265.42 made payable to "All City Title." This check represented the down payment provided by defendant JULIAN M. HICKMAN for the

10

closing on the 3416 Earlham Drive property. The remitter for this check was fraudulently listed as Buyer-1.

h. On or about July 28, 2003, defendant JULIAN M. HICKMAN purchased with a portion of the proceeds of the cashed check described in Overt Acts e. and f. above, National City Bank Official Check Number 774747365, in the amount of $9,254.36 made payable to "All City Title." This check represented the down payment provided by defendant JULIAN M. HICKMAN for the closing on the 1256 Seneca Drive property. The remitter for this check was fraudulently listed as Buyer-1.

i. On or about July 28, 2003, defendant JULIAN M. HICKMAN purchased with a portion of the proceeds of the cashed checks described in Overt Acts e. and f., National City Bank Official Check Number 774747366, in the amount of $9,092.42 made payable to "All City Title." This check represented the down payment provided by defendant JULIAN M. HICKMAN for the closing on the 1829 West Riverview Avenue property. The remitter for this check was fraudulently listed as Buyer-1.

j. On or about July 28, 2003, defendant JULIAN M. HICKMAN purchased with a portion of the proceeds of the cashed checks described in Overt Acts e. and f., National City Bank Official Check Number 774747367, in the amount of $9,669.22 made payable to "All City Title." This check represented the down payment provided by defendant JULIAN M. HICKMAN for the closing on the 1713 Xenia Drive property. The remitter for this check was fraudulently listed as Buyer-1.

k. On or about July 28, 2003, from the remaining proceeds of checks described in Overt Acts e. and f., defendant JULIAN M. HICKMAN deposited $20,241.91 into a National City Bank Account held in the name of "Commercial Property Advisor Group" an account in which the defendant, JULIAN M. HICKMAN, had signatory rights.

l. On or about July 28, 2003, the defendants, JESSICA A. ZBACNIK and JULIAN M. HICKMAN transmitted and caused to be transmitted, by means of wire communications a datafax facsimile of National City Bank Official Check Number 774747364, in the amount of $8,265.42 made payable to "All City Title" relating to the real estate closing of property located at 3416

11

Earlham Drive, from All City Title to Argent Mortgage Company, LLC, 2550 Golf Road, 7th Floor, Rolling Meadows, IL, that falsely and fraudulently, indicated that Buyer-1 had provided a $8,265.42 cash payment at closing, when in fact the defendants JESSICA ZBACNIK, JULIAN M. HICKMAN, and co-conspirator Jocelyn L. Hammond knew this was paid by the defendant JULIAN M. HICKMAN.

m.      On or about July 28, 2003, the defendants JESSICA A. ZBACNIK, JULIAN M. HICKMAN, and co-conspirator Jocelyn L. Hammond, caused to be delivered by Airborne Express, a commercial interstate carrier, certain documents containing certain false and fraudulent real estate appraisal reports, HUD-1 Forms, Form 1003 loan applications and fraudulent copies of down payment checks to Argent Mortgage Company, LLC, 2550 Golf Road, Rolling Meadows, IL from All City Title Agency, Inc., 7087 Corporate Way, Centerville, Ohio 45459.

## 11 North Plaza, Dayton, Ohio

n.      Sometime between March 15, 2002 and October 08, 2003, defendants, ROBERT MITCHELL and KENNETH MCGEE spoke with a person known to the Grand Jury, hereafter referred to as Buyer-2, regarding the purchase of a rental property. Buyer-2 was advised by defendants ROBERT MITCHELL and KENNETH MCGEE that they would provide the necessary monies for a down payment on a contemplated mortgage loan and assist with providing maintenance and/or repairs to the properties.

o.      Subsequent to Overt Act n., defendant JESSICA A. ZBACNIK served as loan officer for Buyer-2, and submitted Buyer-2's Form 1003 loan application to Finance America Company, LLC, 16802 Ashton Street, Irvine, CA, (hereinafter referred to as "Finance America"). This loan application contained false information to include Buyer-2's source of down payment and Buyer-2's credit worthiness or solvency. This loan application also falsely indicated that Buyer-2 had $8,106.29 in funds available and reserved to place as a down payment at the closing.

p.      On or about October 08, 2003, co-conspirator Jocelyn Hammond closed Buyer-2's mortgage loan at All City. Buyer-2 purchased 11 North Plaza, Dayton, Ohio for $65,000.00.

12

q.      Based upon the fraudulent acts of defendants,
ROBERT MITCHELL, KENNETH MCGEE, JESSICA A.
ZBACNIK and co-conspirator Jocelyn Hammond, on or about
October 08, 2003, Finance America caused to be wired $58,276.80
to All City's financial account located at National City Bank, an
FDIC insured institution.

r.      On or about October 10, 2003, co-conspirator,
Jocelyn L. Hammond issued a disbursement check in the amount
of $26,155.35, made payable to "E & A Investments or ROBERT
MITCHELL" on an All City corporate check, numbered 6637,
drawn on a National City Bank checking account. This check
originated from the disbursement funds provided by Argent
Mortgage for the previously described closing on 11 North Plaza,
Dayton, Ohio.

s.      On or about October 10, 2003, defendant ROBERT
MITCHELL cashed the check described in Overt Act r. above at
the 1165 Miamisburg-Centerville Rd., Centerville, Ohio Branch of
National City Bank.

t.      On or about October 10, 2003, defendant ROBERT
MITCHELL purchased with a portion of the proceeds of the cashed
check described in Overt Acts r. and s., National City Bank
Official Check Number 579407702, in the amount of $7,960.53
made payable to "All City Title" which represented the down
payment provided by defendant ROBERT MITCHELL for the
closing on a 7032 Marsh Creek Road property. The remitter for
this check was fraudulently listed as Buyer-2.

u.      On or about October 10, 2003, defendant ROBERT
MITCHELL purchased with a portion of the proceeds of the cashed
check described in Overt Acts r. and s., National City Bank
Official Check Number 579407703, in the amount of $3,813.05
made payable to "All City Title" which represented the down
payment provided by defendant ROBERT MITCHELL for the
closing on a 11 North Plaza property. The remitter for this check
was fraudulently listed as Buyer-2.

v.      On or about October 10, 2003, defendant ROBERT
MITCHELL purchased with a portion of the proceeds of the cashed
check described in Overt Acts r. and s., National City Bank
Official Check Number 579407704, in the amount of $9,907.10
made payable to "All City Title" which represented the down
payment provided by defendant ROBERT MITCHELL for the
closing on a 700 Mia Avenue property. The remitter for this check

13

was fraudulently listed as Buyer-2.

All in violation of 18 U. S. C. §§ 371 and 1349.

## COUNTS 2-7
### (Mail Fraud)

19.    The United States Attorney realleges all the allegations contained in paragraphs 1 - 18 of Count 1 of this Indictment as if they were fully reproduced herein.

20.    From on or about March 15, 2002, and continuing through the date of this Indictment, in the Southern District of Ohio and elsewhere, the defendants JULIAN M. HICKMAN, JESSICA A. ZBACNIK, ROBERT MITCHELL, EDWARD MCGEE, and KENNETH O. MCGEE, together with other individuals both known and unknown to the Grand Jury, did knowingly participate in, devise and intend to devise a scheme and artifice to defraud and obtain money, by means of materially false and fraudulent pretenses, representations and promises, from various real estate investors located in and around the Dayton, Ohio area, and from various out-of-state mortgage lending institutions including Argent Mortgage Company, LLC, 2550 Golf Road, Rolling Meadows, IL. Such scheme and artifice to defraud and obtain money was in substance as follows:

21.    It was part of said scheme and artifice to defraud and to obtain money that the defendants JULIAN M. HICKMAN, JESSICA A. ZBACNIK, ROBERT MITCHELL, EDWARD MCGEE, and KENNETH O. MCGEE, together with other individuals both known and unknown to the Grand Jury, participated in organizing and establishing various business entities to specifically solicit prospective real estate investors from the Dayton, Ohio area to invest in residential properties, the majority of which were depressed, low income and otherwise

14

run-down rental properties in the Dayton, Ohio area.

22.     It was further part of said scheme and artifice to defraud and to obtain money that

the defendants JULIAN M. HICKMAN, JESSICA A. ZBACNIK, ROBERT MITCHELL,

EDWARD MCGEE, and KENNETH O. MCGEE, together with other individuals both known

and unknown to the Grand Jury would cause to be prepared and forwarded certain mortgage loan

applications and other associated personal credit information to various mortgage brokerage

businesses located within the Southern District of Ohio.

23.     It was further part of said scheme and artifice to defraud and to obtain money that

the defendants JULIAN M. HICKMAN, JESSICA A. ZBACNIK, ROBERT MITCHELL,

EDWARD MCGEE, and KENNETH O. MCGEE, together with other individuals both known

and unknown to the Grand Jury, would acquire certain depressed, low income and otherwise run-

down rental properties in the Dayton, Ohio area, which would be sold to investors they had

recruited and solicited.

24.     It was further part of said scheme and artifice to defraud and to obtain money that

the defendants JULIAN M. HICKMAN, JESSICA A. ZBACNIK, ROBERT MITCHELL,

EDWARD MCGEE, and KENNETH O. MCGEE, together with other individuals both known

and unknown to the Grand Jury, would provide prospective real estate investors various

fraudulent verbal assurances to include: (a) the promise of receiving a cash payment upon closing

on each and every rental property purchased; (b) the promise that all purchases of real estate

investment properties would be 100% financed with no money down transactions; (c) the

promise that they would ensure that all investment properties would be properly and timely

repaired and renovated up to rentable standards at no cost to the purchaser; (d) the promise that

15

they would ensure all investment properties would be fully rented before the purchaser would become obligated to make any monthly mortgage payments; and (e) the promise that each investment property would generate a positive monthly cash flow per rental unit. None of these purported promises, assurances or facts were reflected on the respective HUD-1 Forms.

25.     It was further part of said scheme and artifice to defraud and obtain money that the defendants JULIAN M. HICKMAN, JESSICA A. ZBACNIK, ROBERT MITCHELL, EDWARD MCGEE, and KENNETH O. MCGEE, together with other individuals both known and unknown to the Grand Jury, would specifically refer to co-conspirator Jocelyn Hammond of All City Title Agency, Inc., 7087 Corporate Way, Centerville, Ohio 45459, certain real estate closing business on various sales of Dayton, Ohio area investment property sold by the conspiracy.

26.     It was further part of said scheme and artifice to defraud and obtain money that the co-conspirators would fraudulently share disbursement monies issued through checks signed by co-conspirator Jocelyn Hammond and representatives of other title and settlement agencies following closings over which they presided as the designated closing agent. Co-conspirator Jocelyn Hammond would falsely and fraudulently sign associated HUD-1 Forms indicating that the purchaser provided the down payment at closing, while well knowing in fact it was fraudulently paid by a co-conspirator.

27.     Between on or about March 15, 2002, and continuing through the date of this Indictment, in the Southern District of Ohio, and elsewhere, the defendants JULIAN M. HICKMAN, JESSICA A. ZBACNIK, ROBERT MITCHELL, EDWARD MCGEE, and KENNETH O. MCGEE, together with other individuals both known and unknown to the Grand Jury, for the purpose of executing the aforesaid scheme and artifice to defraud and obtain money,

16

knowingly did cause to be delivered by Airborne Express, and DHL Express, both commercial

interstate carriers, according to the directions thereon, envelopes and packages containing certain

false and fraudulent real estate appraisal reports, and Department of Housing & Urban

Development Settlement Statements (HUD-1) signed by various defrauded real estate investors

located in the Dayton, Ohio area, which were addressed from All City Title Agency, Inc., 7087

Corporate Way, Centerville, Ohio 45459, and Partners Land Title Agency, 3033 Kettering Blvd.,

Dayton, Ohio 45439. Each count in the below referenced chart describes the affected purchasers,

date of mailing, property address, loan amount, down payment amount, mortgage lending

institution, settlement agency and express mail carrier.

| COUNT | PURCHASER | DATE OF MAILING | PROPERTY ADDRESS | LOAN AMT./ DOWN PAYMENT | MORTGAGE LENDER | SETTLEMENT AGENCY | EXPRESS CARRIER |
|---|---|---|---|---|---|---|---|
| 2 | Buyer 1 | O/A 7/29/03 | 3416 Earlham | $60,300/ $8,265.42 | Argent | All-City | Airborne |
| 3 | Buyer 2 | O/A 10/20/03 | 11 N. Plaza | $58,500/ $3,813.05 | Argent | All-City | Airborne |
| 4 | Buyer 1 | O/A 7/29/03 | 1713 Xenia | $71,000/ $9,669.22 | Argent | All-City | Airborne |
| 5 | Buyer 3 | O/A 7/28/05 | 115 Morgan | $51,000/ $4,218.71 | Argent | Partners Land Title | DHL |
| 6 | Buyer 2 | O/A 10/15/03 | 700 Mia | $46,800/ $9,907.10 | Argent | All-City | Airborne |

| 7 | Buyer 2 | O/A 11/13/03 | 908-910 Harvard | $72,000/ $11,418.67 | Argent | All-City | Airborne |
|---|---------|--------------|-----------------|---------------------|--------|----------|----------|

All in violation of 18 U. S. C. §§ 1341 and 2.

## COUNT 8
### (Wire Fraud)

28.     The United States Attorney realleges all of the allegations contained in paragraphs 1 - 18 of Count 1 of this Indictment as if they were fully reproduced herein.

29.     The United States Attorney realleges all the allegations contained in paragraphs 20 - 27 of Counts 2 - 7 of this Indictment as if they were fully reproduced herein.

30.     On or about July 29, 2003, in the Southern District of Ohio, and elsewhere, having knowingly participated in, devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, the defendants JESSICA A. ZBACNIK and JULIAN M. HICKMAN, for the purpose of executing, and attempting to execute the aforesaid scheme and artifice to defraud knowingly did cause to be transmitted and aided and abetted others in transmitting and causing to transmit in interstate and foreign commerce, by means of wire communications, certain signs, signals, and sounds, a wire transfer in the amount of $60,826.89 from Argent Mortgage Company, LLC, 2550 Golf Road, Rolling Meadows, IL via the National City Bank to All-City Title Agency, 7087 Corporate Way, Centerville, OH relating to the real estate mortgage closing of property located at 3416 Earlham Drive, Dayton.

All in violation of 18 U.S.C. §§ 1343 and 2.

18

## COUNT 9
### (Wire Fraud)

31.     The United States Attorney realleges all of the allegations contained in paragraphs

1 - 18 of Count 1 of this Indictment as if they were fully reproduced herein.

32.     The United States Attorney realleges all the allegations contained in paragraphs

20 - 27 of Counts 2 - 7 of this Indictment as if they were fully reproduced herein.

33.     On or about April 1, 2004, in the Southern District of Ohio, and elsewhere,

having knowingly participated in, devised and intended to devise a scheme and artifice to

defraud, and for obtaining money and property by means of materially false and fraudulent

pretenses, representations, and promises, the defendants KAMAL J. GREGORY, ROBERT

MITCHELL, KENNETH O. MCGEE and EDWARD MCGEE, for the purpose of executing, and

attempting to execute the aforesaid scheme and artifice to defraud knowingly did cause to be

transmitted, and aided and abetted others in transmitting and causing to transmit in interstate and

foreign commerce, by means of wire communications, certain signs, signals, and sounds, a wire

transfer in the amount of $44,540.55 from People's Choice Home Loan, 7525 Irvine Center

Drive, Irvine, CA 92618 via Bank One, NA to NETCO Dayton, 1129 Miamisburg-Centerville

Rd., Ste. 100, West Carrollton, OH, relating to the real estate mortgage closing on a property

located at 1332 Miami Chapel Road, Dayton, Ohio.

All in violation of 18 U.S.C. §§ 1343 and 2.

19

## COUNT 10
### (Conspiracy to Launder Money Under 18 U. S. C. 1956(h))

### INTRODUCTION

34.    From on or about March 15, 2002, and continuing through until the date of this

Indictment, in the Southern District of Ohio and elsewhere, defendants JULIAN M. HICKMAN,

KAMAL J. GREGORY, JESSICA A. ZBACNIK, ROBERT MITCHELL, EDWARD MCGEE,

and KENNETH O. MCGEE, together with others, both known and unknown to the Grand Jury,

did conspire between themselves and each other to commit certain offenses against the United

States as follows:

> a)    knowing that certain property involved in a financial transaction affecting
> interstate commerce represented the proceeds and profits of some form of
> unlawful activity, did conduct and attempt to conduct such financial transaction
> which, in fact involved the proceeds of specified unlawful activity with the intent
> to promote the carrying on of a specified unlawful activity, in violation of 18 U. S.
> C. § 1956(a)(1)(A)(i), and 18 U. S. C. § 2.
>
> b)    did knowingly engage in, and attempted to engage in monetary transactions
> by, through, or to a financial institution affecting interstate or foreign commerce in
> criminally derived property having a value greater than $10,000.00 that was
> deposited, withdrawn, transferred and exchanged in U.S. currency, funds and

20

monetary instruments such as to affect interstate commerce, from one or more

violations of 18 U. S. C. § 1957.

## OBJECTS OF THE CONSPIRACY

35.     It was an object of the conspiracy that financial transactions were completed

knowing that the property and money involved in said transactions represented proceeds and

profits of various forms of specified unlawful activities associated with mortgage fraud to include

money laundering, mail fraud and wire fraud on mortgage loan applications and associated

documents.

36.     It was further an object of the conspiracy that financial transactions were

completed with the intent to promote the carrying on of acts of mortgage fraud in the form of

specified unlawful activities associated with mortgage fraud to include money laundering, mail

fraud and wire fraud on mortgage loan applications and associated documents.

37.     It was further an object of the conspiracy to knowingly engage, or attempt to

engage in monetary transactions in property valued in excess of $10,000.00 which was criminally

derived from specified unlawful activities associated with mortgage fraud to include money

laundering, mail fraud and wire fraud on mortgage loan applications and associated documents.

38.     It was further an object of the conspiracy to allow the conspirators to enjoy the

benefits of the substitute proceeds received through their mortgage fraud activities while

attempting to insulate them from criminal prosecution.

21

## THE MANNER AND MEANS

39.     The United States Attorney realleges all the allegations of paragraphs 1 - 18 contained in Count 1 as if they were fully reproduced herein.

40.     The United States Attorney realleges all the allegations contained in paragraphs 20 - 33 of Counts 2 - 9 of this Indictment as if they were fully reproduced herein.

41.     At all times during the above stated time period, it was a part of the conspiracy for the defendants herein to prepare and submit, and cause to be prepared and submitted on behalf of prospective purchasers of residential properties, the majority of which were low income and otherwise depressed residential properties in the Dayton, Ohio area, and other areas, certain mortgage loan application packages to various lending institutions located throughout the United States which contained false, fictitious, forged and fraudulent documents including: agreements to sell real estate, Forms 1003, Forms HUD-1, bank statements, bank deposit slips, bank withdrawal slips, residential property appraisal reports, copies of down payment checks and other related miscellaneous correspondence and memoranda. These false, fictitious, and fraudulent documents were placed or caused to be placed in interstate commerce by the above named defendants, and other aforesaid named and unnamed individuals via commercial interstate carrier; and via electrical signs and signals by means of wire communication facsimile transmissions from telephone numbers installed at business locations and offices located throughout the Southern District of Ohio to various other locations outside the State of Ohio.

22

42.     It was further part of the conspiracy that defendants JULIAN M. HICKMAN,

KAMAL J. GREGORY, JESSICA A. ZBACNIK, ROBERT MITCHELL, EDWARD MCGEE,

and KENNETH O. MCGEE, opened and caused other persons to open accounts at various

financial institutions both within and outside the Southern District of Ohio. Said accounts were

opened in names to include: "Commercial Property Advisor Group", "Diamond Venture Capital

Group", "Gem City Professional Services", "First Union Appraisals", "JMH Real Estate", "E &

A Investments", "E & A Contractors", "K M Investments", "Midwest Alliance Commercial", "K

& M Auto Sales LLC", "All-City Title Agency, Inc.", "Partners Land Title", and "NETCO".

43.     It was further part of the conspiracy that each of the named defendants caused

criminally derived funds in excess of $10,000.00 to be transferred to and from FDIC financial

institution accounts in the Southern District of Ohio and elsewhere, as part of their normal

business operations in the Southern District of Ohio, which in turn promoted the carrying on of

the specified unlawful activity to include: mail fraud, wire fraud and money laundering in

violation of 18 U. S. C. §§ 1341, 1343, 1956 and 1957 respectively.

## OVERT ACTS

44.     In furtherance of the conspiracy and to effect the objects thereof, a conspirator

committed one or more overt acts listed below in furtherance of the conspiracy causing the

following transfers and numbered overt acts to take place:

> a.     The United States Attorney realleges and incorporates
> herein paragraphs 18a. through 18v. of Count 1 as if they were
> fully reproduced herein.

23

b.      Between the period of between on or about March 15, 2002 and on or about June 14, 2006, the defendant, JULIAN M. HICKMAN, participated in 107 separate fraudulent real estate closings involving real estate located throughout the Southern District of Ohio.  The net fraudulent loan amounts associated with these closings exceeded $8,500,000.

c.      Between the period of between on or about March 15, 2002 and on or about June 14, 2006, the gross monies disbursed at closings to the defendant, JULIAN M. HICKMAN and his co-conspirators totaled over $3.8 million dollars on the 107 real estate closings described in Overt Act b. above.

d.      Between the period of between on or about March 1, 2002 and on or about June 14, 2006, defendant JULIAN M. HICKMAN, and his co-conspirators concealed from various lending institutions the fraudulent cash payments exceeding $800,000 in down payments on the 107 real estate closings described in Overt Acts c. and d. above.

e.      Between the period of between on or about October 30, 2002 and on or about April 25, 2007, the defendant, ROBERT MITCHELL, participated in 62 separate fraudulent real estate closings involving real estate located throughout the Southern District of Ohio.  The net fraudulent loan amounts associated with these closings exceeded $4,500,000.

f.      Between the period of between on or about October 30, 2002 and on or about April 25, 2007, the gross monies disbursed at closings to the defendant, ROBERT MITCHELL and his co-conspirators totaled over $1.8 million dollars on the 62 real estate closings described in Overt Act e. above.

g.      Between the period of between on or about October 30, 2002 and on or about April 25, 2007, defendant ROBERT MITCHELL, and his co-conspirators concealed from various lending institutions the fraudulent cash payments exceeding $460,000 in down payments on the 62 real estate closings described in Overt Acts e. and f. above.

h.     Between the period of between on or about December 27, 2002 and on or about June 29, 2007, the defendant, KENNETH O. MCGEE, participated in 75 separate fraudulent real estate closings involving real estate located throughout the Southern District of Ohio. The net fraudulent loan amounts associated with these closings exceeded $4,800,000.

i.     Between the period of between on or about December 27, 2002 and on or about June 29, 2007, the gross monies disbursed at closings to the defendant, KENNETH O. MCGEE and his co-conspirators totaled over $2.4 million dollars on the 75 real estate closings described in Overt Act h. above.

j.     Between the period of between on or about February 14, 2003 and on or about October 31, 2005, defendant KENNETH O. MCGEE, and his co-conspirators concealed from various lending institutions the fraudulent nature of the cash payments exceeding $560,000 in down payments on the 75 real estate closings described in Overt Acts h. and I.

k.     Between the period of between on or about February 14, 2003 and on or about October 31, 2005, the defendant, EDWARD MCGEE, participated in 28 separate fraudulent real estate closings involving real estate located throughout the Southern District of Ohio. The net fraudulent loan amounts associated with these closings exceeded $1,700,000.

l.     Between the period of between on or about February 14, 2003 and on or about October 31, 2005, the gross monies disbursed at closings to the defendant, EDWARD MCGEE and his co-conspirators totaled over $960,000 on the 28 real estate closings described in Overt Act k. above.

m.     Between the period of between on or about February 14, 2003 and on or about October 31, 2005, defendant EDWARD MCGEE, and his co-conspirators concealed from various lending institutions the fraudulent nature of the cash payments exceeding $190,000 in down payments on the 28 real estate closings described in Overt Acts k. and l. above.

25

n.      Between the period of between on or about February 14, 2003 and on or about April 29, 2005, the defendant, KAMAL J. GREGORY, participated in 46 separate fraudulent real estate closings involving real estate located throughout the Southern District of Ohio. The net fraudulent loan amounts associated with these closings exceeded $4,200,000.

o.      Between the period of between on or about February 14, 2003 and on or about April 29, 2005, the gross monies disbursed at closings to the defendant, KAMAL J. GREGORY and his co-conspirators totaled over $1.3 million dollars on the 46 real estate closings described in Overt Act n. above.

p.      Between the period of between on or about February 14, 2003 and on or about April 29, 2005, defendant KAMAL J. GREGORY, and his co-conspirators concealed from various lending institutions the fraudulent nature of the cash payments exceeding $380,000 in down payments on the 46 real estate closings described in Overt Acts n. and o. above.

q.      Between the period of between on or about October 30, 2002 and on or about August 24, 2004, the defendant, JESSICA A. ZBACNIK, participated in 53 separate fraudulent real estate closings involving real estate located throughout the Southern District of Ohio. The net fraudulent loan amounts associated with these closings exceeded $4,100,000.

r.      Between the period of between on or about October 30, 2002 and on or about August 24, 2004, the gross monies disbursed at closings to the defendant, JESSICA A. ZBACNIK and her co-conspirators totaled over $2.1 million dollars on the 53 real estate closings described in Overt Act q. above.

s.      Between the period of between on or about October 30, 2002 and on or about August 24, 2004, defendant JESSICA A. ZBACNIK, and her co-conspirators concealed from various lending institutions the fraudulent nature of the cash payments exceeding $510,000 in down payments on the 53 real estate closings described in Overt Acts q. and r. above.

All in violation of 18 U. S. C. § 1956(h).

## COUNT 11
**(Willful Failure to File Income Tax Return - Misdemeanor)**

45.     During the calendar year 2003, defendant JULIAN M. HICKMAN, who was a

resident of Centerville, Ohio, had and received gross income in excess of $680,000; that by

reason of such income he was required by law, following the close of calendar year 2003, and on

or before April 15, 2004, to make an income tax return to the District Director of the Internal

Revenue Service for the Internal Revenue District of Cincinnati, at Cincinnati, in the Southern

District of Ohio, or to the Director, Internal Revenue Service Center, at Memphis, Tennessee, or

other proper officer of the United States, stating specifically the items of his gross income and

any deductions and credits to which he was entitled; that well-knowing and believing all of the

foregoing, he did willfully fail to make an income tax return to said Director of the Internal

Revenue Service, to said Director of the Internal Revenue Service Center, or to any other proper

officer of the United States.

In violation of 26 U. S. C. § 7203.

## COUNT 12
**(Willful Failure to File Income Tax Return - Misdemeanor)**

46.     During the calendar year 2004, defendant JULIAN M. HICKMAN, who was a

resident of Centerville, Ohio, had and received gross income in excess of $830,000; that by

reason of such income he was required by law, following the close of calendar year 2004, and on

or before April 15, 2005, to make an income tax return to the District Director of the Internal

Revenue Service for the Internal Revenue District of Cincinnati, at Cincinnati, in the Southern

District of Ohio, or to the Director, Internal Revenue Service Center, at Memphis, Tennessee, or

other proper officer of the United States, stating specifically the items of his gross income and

any deductions and credits to which he was entitled; that well-knowing and believing all of the
foregoing, he did willfully fail to make an income tax return to said Director of the Internal
Revenue Service, to said Director of the Internal Revenue Service Center, or to any other proper
officer of the United States.

In violation of 26 U. S. C. § 7203.

## COUNT 13
### (Willful Failure to File Income Tax Return - Misdemeanor)

47.     During the calendar year 2005, defendant JULIAN M. HICKMAN, who was a
resident of Centerville, Ohio, had and received gross income in excess of $200,000; that by
reason of such income he was required by law, following the close of calendar year 2005, and on
or before April 17, 2006, to make an income tax return to the District Director of the Internal
Revenue Service for the Internal Revenue District of Cincinnati, at Cincinnati, in the Southern
District of Ohio, or to the Director, Internal Revenue Service Center, at Memphis, Tennessee, or
other proper officer of the United States, stating specifically the items of his gross income and
any deductions and credits to which he was entitled; that well-knowing and believing all of the
foregoing, he did willfully fail to make an income tax return to said Director of the Internal
Revenue Service, to said Director of the Internal Revenue Service Center, or to any other proper
officer of the United States.

In violation of 26 U. S. C. § 7203.

28

## FORFEITURE ALLEGATION #1
## AS TO COUNTS 1 THRU 9

Upon the conviction of the defendant for the violations in each of Counts, 1 thru 9, the defendants shall forfeit to the United States, under 18 U. S. C. § 981(a)(1)(C) and 28 U. S. C. § 2461(c), all property, real and personal, which constitutes or is derived from proceeds traceable to such violation(s), including, but not limited to:

Money Judgment:

A money judgment in the amount of the proceeds.

## FORFEITURE ALLEGATION #2
## AS TO COUNT 10

### (Proceeds and Traceable to Proceeds)

1.      Pursuant to 18 U. S. C. § 982(a)(1), each defendant who is convicted of the offense set forth in Count 10, shall forfeit to the United States the following property:

a.      Any and all property involved in such offense for which the defendant is convicted, and all property traceable to such property, including the following: 1) all money or other property that was the subject of each transaction, transmission or transfer in violations of Sections 1956 or 1957; 2) all commissions, fees and other property constituting proceeds obtained as a result of those violations; and 3) all property used in any manner or part to commit or to facilitate the commission of those violations.

b.      A sum of money equal to the total amount of money involved in the offense. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense.

29

5252222525552555

5225255225225

All in accordance with 18 U. S. C. §982(a)(1) and Rule 32.2(a), Federal Rules of Criminal Procedure.

A TRUE BILL

/s/
GRAND JURY FOREPERSON

GREGORY G. LOCKHART
UNITED STATES ATTORNEY

DALE ANN GOLDBERG
Executive Assistant United States Attorney

30